UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

HARVEY GENE CREGGETT                                              PLAINTIFF

v.                                              CIVIL ACTION NO. 3:08-CV-299-CRS

BOARD OF EDUCATION OF
JEFFERSON COUNTY                                                 DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on motion of the Defendant, Board of Education of Jefferson County[1] for summary judgment (DN 29) on all claims by Plaintiff, Harvey Gene Creggett.  Plaintiff filed his Complaint against Defendant, alleging violations of KRS 344.040(1) and 42 U.S.C. § 2000e-5 for discrimination against him in the terms, privileges and conditions of his employment because of his age, sex and race, and also alleging retaliation pursuant to KRS 244.280 and 42 U.S.C. § 2000e-3(a) due to his claimed opposition of how he was treated.  Plaintiff's Amended Complaint, ¶ 6.  Plaintiff also alleged that the unlawful conduct created a hostile work environment and that he was a victim of intentional infliction of emotional distress.  *Id.*

Plaintiff, a 58 year-old, African-American male, is employed with Defendant as a Social Studies Teacher at Fairdale High School ("Fairdale").   Plaintiff alleges that discussions with Fairdale Principal, Linda Brown ("Brown), denials of professional development opportunities, and informal classroom observations were discriminatory and illegally motivated.  Plaintiff submitted

---

[1]Plaintiff's original Complaint named "Jefferson County School District" as the defendant, but Plaintiff's Amended Complaint clarified the appellation of Defendant as "Board of Education of Jefferson County."  For purposes of this opinion, we refer to Defendant as "Board of Education of Jefferson County."

an internal Employee Discrimination Grievance with JCBE, which found his claims unsubstantiated. Plaintiff also filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Kentucky Commission on Human Rights, alleging race, gender, and age discrimination and retaliation. Both entities dismissed his claims as unsubstantiated and failing to show any violations of applicable statutes. Plaintiff then pursued action in this Court and Defendant has moved for summary judgment on all claims. For the reasons set forth below, the motion will be granted.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-28, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *First Nat'l. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S. Ct. 1575, 20 L. Ed. 2d 569 (1968). The evidence must be construed in a

light most favorable to the party opposing the motion. *Id*. at 587; *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

I. Plaintiff's Discrimination Claims

Plaintiff has asserted that Defendant discriminated against him on the basis of his race, age and gender in violation of KCRA, KRS 344 *et seq*., and Title VII of Civil Rights Act.[2]  A discrimination plaintiff may establish a viable cause of action either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination. *Wilson v. Dana Corp*., 210 F.Supp.2d 867, 883 (W.D. Ky. 2002) (quoting *Kline v. Tenn. Valley Auth*., 128 F.3d 337, 348 (6th Cir. 1997)).  In order for direct evidence to establish discrimination, "[t]he evidence must establish not only that the plaintiff's employer was predisposed to discriminate on the basis of [race, age, or gender], but also that the employer acted on that predisposition." *Id*.  No inferences must be needed in order to conclude that the challenged employment action was motivated, at least in part, by unlawful means. *Id*.  Plaintiff has not presented any direct evidence of discrimination by Defendant.  Therefore, discrimination must be established using indirect evidence.

When discrimination on the basis of race, age, or gender is alleged and sought to be proven on the basis of indirect evidence, the governing test involves the burden-shifting analysis outlined by the U.S. Supreme Court in *McDonnell Douglas Corporations v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)

---

[2]KRS Chapter 344 mirrors Title VII of the Civil Rights Act, so courts look to the federal standards for guidance when evaluating discrimination claims brought under Chapter 344 of the Kentucky statutes. *Ky. Comm'n on Human Rights v. Ky.*, 586 S.W.2d 270, 271 (Ky. App. 1979); *Snowden v. Ky. Smelting Technology, Inc.*, 2010 WL 2218735 at *4 (Ky. App. 2010).  Therefore, both claims may be analyzed under federal law.

(applying the *McDonnell Douglas* test to a race discrimination claim); *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 390 (6th Cir. 2009) (applying *McDonnell Douglas* to a gender discrimination claim); *Shoonmaker v. Spartan Graphics Leasing*, LLC, 595 F.3d 261, 264 n.2 (6th Cir. 2010) (applying *McDonnell Douglas* to an age discrimination suit).  Under the *McDonnell Douglas* burden-shifting test, Plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence to withstand summary judgment. *Risch*, 581 F.3d at 391.  If Plaintiff is able to establish a *prima facie* case of discrimination, the burden then shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its decision. *Id.*  If Defendant satisfies this burden, Plaintiff then must prove that the legitimate reasons offered by Defendant are merely a pretext for discrimination. *Id.*

In order to establish a *prima facie* case of discrimination, Plaintiff must show that (1) he is a member of a protected class; (2) his job performance met Defendant's legitimate expectations; (3) he suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. at 1824; *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1981 (6th Cir. 1994) *overruled on other grounds by Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009).

Viewing the evidence in the light most favorable to Plaintiff, he is a member of a protected class and his job performance met Defendant's legitimate expectations.  However, we conclude that Plaintiff did not suffer any adverse employment action.  An adverse employment action is "a materially adverse change in the terms and conditions of a plaintiff's employment." *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010) (citing *White v. Burlington N. & Santa Fe Ry. Co.*, 362 F.3d 789, 795 (6th Cir. 2004) (en banc)).  The Sixth Circuit has noted that a materially adverse

change in employment "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2002). "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Id*. Employment actions that are not materially adverse, such as "*de minimis* employment actions" are not actionable. *Virostek v. Liberty Twp. Police Dep't/Trs.*, 14 Fed. Appx. 493, 503 (6th Cir. 2001).

Plaintiff has not established that he suffered an adverse employment action. Plaintiff received a Form E-2 conference summary of a meeting with Brown regarding Plaintiff's violations of the Professional Code of Ethics for Kentucky Certified Personnel. This Code of Ethics included a student confidentiality policy, requiring faculty members to maintain student confidentiality. The Form E-2 summarized findings by Brown that Plaintiff violated the student confidentiality policy when he disseminated a memorandum to other faculty members that he entitled "Students' Behavior Log." The memo discussed behavioral problems Plaintiff was having with named individual students and progressive discipline methods attempted by Plaintiff. The memo further revealed confidential discussions between Plaintiff and the students' parents, and provided telephone numbers for students. Plaintiff also stated in the memo that he would provide additional reports on individual student behavior in the future. Brown wrote in the Form E-2 that Brown discussed with Plaintiff his violative memo and the limits and constraints of the student confidentiality policy.

The Form E-2 also included findings by Brown that Plaintiff had violated the Code of Ethics by falsely reporting that a student called Plaintiff a "black nigger." The Code of Ethics prohibits

teachers from knowingly making false statements about students. Brown found that although Plaintiff maintained that the student called him the epithet, ample evidence to the contrary existed, including Plaintiff's own admissions to the Fairdale Assistant Principal and the student's parent that the report was false. Brown summarized in the Form E-2 her discussions with Plaintiff regarding publishing and distributing derogatory information about students.

The issuance of this Form E-2 conference summary to Plaintiff does not constitute an adverse employment action because a Form E-2 is not a written reprimand and has no effect on an employee's title, benefits, or salary. *See Bowman*, 220 F.3d at 462 (holding "a removal of [plaintiff] from the Coordinator position for only approximately ten days with no loss of income is properly characterized as *de minimis* employment action that does not rise to the level of a materially adverse employment decision"). A Form E-2 is merely a procedural requirement of the Jefferson County Teachers Association 2005-2010 Collective Bargaining Agreement and only summarizes what was discussed in the meeting. Plaintiff has not received any demotions or decreases in pay since beginning with Fairdale. Plaintiff was denied some professional development opportunities based on budget constraints at Fairdale, but was not prevented from attending other opportunities.

Plaintiff also has not shown an adverse employment action based upon alleged excessive classroom observations. Plaintiff's department head was authorized to conduct informal observations in order to assist all Social Studies teachers with lesson plans and provide feedback. Plaintiff was only observed seven times in a one year period and Plaintiff has provided no evidence with regard to the frequency of observations of other teachers in his department. Even if Plaintiff was observed more than other teachers, the observations were not formal or evaluative and no tangible employment action occurred as a result of the observations.

Without proof of any adverse employment action against Plaintiff, he cannot establish a *prima facie* case of discrimination and his discrimination claims fail.

Even if Plaintiff could establish an adverse employment action, his *prima facie* case still fails. Plaintiff relies on the fact that two Caucasian female teachers, also accused of violating the student confidentiality policy, received lesser sanctions in the form of email reprimands from Brown, in contrast to Plaintiff's receiving a Form E-2 conference summary. The two Caucasian female teachers both violated the student confidentiality policy by sending emails to other faculty members at Fairdale that discussed the behavior of named students. However, significant differences between the conduct of Plaintiff and the two Caucasian female teachers support Plaintiff's receiving a Form E-2, as opposed to an email reprimand as the two Caucasian female teachers received. The offenses of the two Caucasian female teachers were less severe than Plaintiff's violations, in that the communications circulated by the two Caucasian female teachers:

> (1) named only one student, in contrast to Plaintiff's memo which named several individual students;
> (2) did not disclose confidential discussions with parents, in contrast to Plaintiff's memo which disclosed confidential discussions with parents regarding student behavior;
> (3) did not reveal student telephone numbers, in contrast to Plaintiff's memo which provided telephone numbers for students; and
> (4) did not indicate that more student behavior information would be provided in the future, in contrast to Plaintiff's memo which promised future reports on students.

Additionally, during the course of the meeting between Brown and Plaintiff, the incident was discussed in which Plaintiff had reported that a student called Plaintiff a "black nigger." Brown found that this was actually a false report by Plaintiff. There were no similar issues of false reporting by the two Caucasian female teachers.

There are significant differences between the conduct of Plaintiff and the two Caucasian female teachers.  Assuming *arguendo* that Brown's issuance to Plaintiff of a Form E-2 could be construed as an adverse employment action, Plaintiff has not established that the two Caucasian female teachers who also violated the student confidentiality policy were similarly situated to Plaintiff.  Therefore, Plaintiff's claims fail.

Further, even if Plaintiff established a *prima facie* case of discrimination, under the *McDonnell Douglas* burden shifting analysis, the burden then shifts to Defendant to proffer a legitimate, nondiscriminatory reason for its decision to issue Plaintiff a Form E-2, as opposed to an email reprimand similar to those received by the two Caucasian female teachers.  *See McDonnell*, 411 U.S. at 802.  Defendant has proffered a legitimate, nondiscriminatory reason for its decision, namely that Plaintiff's transgressions of the student confidentiality policy and Code of Ethics were more severe than those of the two Caucasian female teachers.  The above facts show that this is true.

The burden then shifts to Plaintiff under the *McDonnell Douglas* analysis to show that Defendant's legitimate, nondiscriminatory reason for its decision to issue Plaintiff a Form E-2, rather an email reprimand, is actually a pretext for discrimination.  *See McDonnell*, 411 U.S. at 802.  Plaintiff has not put forth evidence to meet his burden of proof that Defendant's proffered reason, specifically that Plaintiff's transgressions of the Code of Ethics were more severe than the two Caucasian female teachers, is a pretext.  In the Sixth Circuit, a plaintiff can establish pretext "in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reason did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action."  *Chen*, 580 F.3d at 400.  Ultimately, at the summary judgment stage, Plaintiff must produce "evidence from which a jury could reasonably doubt the employer's

explanation." *Id*. at 400 n.4; *see also Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 504 (6th Cir. 2007) ("As the Supreme Court noted in *Reeves*, summary judgment is appropriate, as in this case, if the plaintiff 'only created a weak issue of fact as to whether the defendant's reason was untrue' and there is ample evidence to support the employer's position.") (quoting *Reeves v. Sanderson Plumbing Prod., Inc*., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

Plaintiff has provided no evidence to show that any discriminatory motivations were behind his receiving a Form E-2, in contrast to the email reprimands given to other employees. The undisputed facts validate Defendant's assertion that legitimate, non-discriminatory reasons supported its decision, namely that Plaintiff's transgressions of the student confidentiality policy and Code of Ethics were more severe than those of the two Caucasian female teachers. Plaintiff has also provided no evidence to rebut Defendant's assertion that any professional development opportunity denials were due to budget constraints or funding concerns.

Plaintiff has failed to create a genuine issue of fact as to pretext on his discrimination claims. Defendant is entitled to summary judgment on these claims.

II. Plaintiff's Retaliation Claim

Plaintiff's claims that Defendants violated his KCRA and Title VII rights by retaliating against him also fail.[3] To make a *prima facie* case of Title VII retaliation, a plaintiff must prove: (1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to defendant; (3) defendant thereafter took adverse employment action against the plaintiff; and (4)

---

[3]As the language of the Kentucky Civil Rights Act tracks the language of Title VII, Plaintiff's KCRA claim and Title VII claim of retaliation can both be analyzed under federal law. *Ford*, 305 F.3d at 553 n. 3 (citing *Meyers v. Chapman Printing Co., Inc*., 840 S.W.2d 814, 820 (Ky. 1992) ("[t]he language of the KCRA generally tracks the language of Title VII and, thus, should be interpreted consonant with federal interpretation")).

there was a causal connection between the protected activity and the adverse employment action. *Ford v. General Motors Corporation*, 305 F.3d 545, 552-53 (6th Cir. 2002). The same analysis as with Plaintiff's discrimination claims is applicable with his retaliation claims. Because Plaintiff has not established a tangible adverse employment action, as discussed above, his retaliation claims fail. Therefore, the other *prima facie* elements need not be addressed and Defendant is entitled to summary judgment on Plaintiff's retaliation claims.

III. <u>Plaintiff's Hostile Work Environment Claim</u>

Plaintiff may establish a violation of Title VII without an adverse employment action if Plaintiff can prove a hostile work environment existed. *Bowman v. Shawnee State University*, 220 F.3d 456, 462 (6th Cir. 2000). "A hostile work environment occurs when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Evidence to prove a hostile work environment may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere utterance; and whether it reasonably interferes with an employee's work performance." *Ceckitti v. City of Columbus, Dept. Of Public Safety, Div. of Police*, 14 Fed. Appx. 512, 516 (6th Cir. 2001). The court should consider the totality of the circumstances in determining whether a hostile work environment existed. *Id.*

Even taking the evidence in the light most favorable to Plaintiff, a reasonable juror could not find that a hostile work environment existed. Plaintiff alleged Brown was cold towards him and refused to meet with him unless a union representative was present, but "Title VII was not meant

to be, and Courts must ensure that it does not become a 'general civility code.'" *Ceckitti*, 14 Fed.Appx. at 518 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).   Plaintiff also alleges that he was subjected to excessive classroom observation.  However, the Social Studies department head only observed Plaintiff informally seven times in a one year period and Plaintiff has not provided any evidence regarding informal observations of other teachers.  Plaintiff acknowledged that the department head was authorized to conduct informal observations of all teachers in his department and the purpose of these observations was to assist on instructional manners.  Plaintiff did not receive negative feedback as a result of the informal observations and the department head ceased conducting observations of teachers when plaintiff complained.  Although increased scrutiny can constitute harassment, *see Ford v. General Motors Corporation*, 305 F.3d 545 (6th Cir. 2002) (hostile work environment existed where plaintiff was forced to do more work than others, scrutinized more closely than coworkers, and his requests for reductions in workload were rejected), the few authorized and informal observations of Plaintiff are clearly not the kind of "severe conduct" necessary for a hostile work environment claim.  *Ceckitti*, 14 Fed.Appx. at 518.

Plaintiff has not made allegations that rise to the level of severe or pervasive conduct necessary to constitute a hostile work environment.  Defendant is also entitled to summary judgment on Plaintiff's hostile work environment claim.

IV. Plaintiff's Intentional Infliction of Emotional Distress Claim

In order to establish a claim of intentional infliction of emotional distress under Kentucky law, a Plaintiff must prove that: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was so outrageous and intolerable as to offend generally accepted standards of morality and

decency; (3) there is a causal connection between the conduct and the emotional distress; and (4) the emotional distress has been severe. *Ford*, 305 F.3d at 555 (citing *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 67 (Ky. 1996)). "The Kentucky Supreme Court has stressed 'that major outrage is essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting or will have his feelings hurt, is not enough.'" *Brown v. Lexington-Fayette Urban County Government Department of Public Works*, 2010 WL 1529410 (E.D. Ky. 2010) (quoting *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 791-92 (Ky. 2004)); *see also Ford*, 305 F.3d at 555 (plaintiff "cannot claim credibly that an increased workload, heightened scrutiny, and constructive discharge was so outrageous and intolerable as to offend generally accepted standards of morality and decency"). Plaintiffs allegations clearly do not reach the level of outrage required for an intentional infliction of emotional distress claim under Kentucky law and Defendant's motion for summary judgment on this claim must also be granted.

Conclusion

For the reasons stated, the Court concludes that the motion for summary judgment of the Defendant is well grounded. It will therefore be granted in an order consistent with this opinion, entered this date.

October 17, 2011

**Charles R. Simpson III, Judge**
**United States District Court**